# In the United States Court of Federal Claims

No. 10-599 C

(E-Filed: December 9, 2010)

| | |
|---|---|
| PYRAMID REAL ESTATE SERVICES, LLC,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>MATT MARTIN REAL ESTATE MANAGEMENT, LLC,<br>Defendant-Intervenor,<br>and<br>HOMETELOS, LP,<br>Defendant-Intervenor. | Bid Protest; Violation of Protective Order; Availability of Sanctions or Remedies; Government and Intervenor Entitled to Reasonable Expenses, Including Attorney's Fees |

Janine S. Benton, Falls Church, VA, for plaintiff; John M. Murdock, Kathy C. Potter and Rosanne E. Staffiej, Falls Church, VA, of counsel.

Tara K. Hogan, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for

defendant; Patrick Simien, Office of the General Counsel, Department of Housing and Urban Development, Washington, DC, of counsel.

Laurence Schor, Washington, DC, for defendant-intervenor Matt Martin Real Estate Management, LLC; Susan L. Schor and Dennis C. Ehlers, Washington, DC, of counsel.

J. Alex Ward, Washington, DC, for defendant-intervenor HomeTelos, LP; Leslie H. Lepow, Eric R. Haren and Damien C. Specht, Washington, DC, of counsel.

OPINION AND ORDER

HEWITT, Chief Judge

Before the court are Defendant's Motion for Leave to File Status Report, Docket Number (Dkt. No.) 48, filed on October 7, 2010; Defendant's Status Report, Dkt. No. 48-1, filed on October 7, 2010; Matt Martin Real Estate Management LLC's Response to Defendant's Motion for Leave to File Status Report and Defendant's Status Report (Matt Martin Status Report), Dkt. No. 49, filed on October 8, 2010; Matt Martin Real Estate Management LLC's Supplemental Response to Defendant's Motion for Leave to File Status Report and Defendant's Status Report, Dkt. No. 54, filed on October 15, 2010; Defendant's Motion to Enforce the Protective Order (Defendant's Motion or Def.'s Mot.), Dkt. No. 59, filed on October 29, 2010; Matt Martin Real Estate Management LLC's Response to Defendant's Motion to Enforce the Protective Order (Matt Martin Resp.), Dkt. No. 64, filed on November 12, 2010; Defendant's Reply to Matt Martin's Response to Motion to Enforce the Protective Order (Def.'s Reply), Dkt. No. 65, filed on November 16, 2010; Intervenor HomeTelos's Reply in Support of the United States'[] Motion to Enforce the Protective Order (HomeTelos Reply), Dkt. No. 66, filed on November 16, 2010; and Matt Martin Real Estate Management LLC's Surreply to Defendant's and HomeTelos LP's Replies in Support of Defendant's Motion to Enforce the Protective Order (Matt Martin Sur-Reply), Dkt. No. 68, filed on November 18, 2010.

## I. Background

Defendant's Motion alleges that information covered by a protective order in this bid protest was used--in violation of the protective order--to file a separate bid protest. Def.'s Mot. 4. On September 9, 2010 Pyramid Real Estate Services, LLC (Pyramid), an unsuccessful offeror in Solicitation R-OPC-23441 (Solicitation) issued by the United States government acting through the United States Department of Housing and Urban Development (HUD, the government or defendant), filed this post-award bid protest action in the United States Court of Federal Claims (Court of Federal Claims). See Complaint for Injunctive and Declaratory Relief, Dkt. No. 1. Matt Martin Real Estate Management LLC (Matt Martin), a successful bidder in the Solicitation, filed a motion to

intervene, Matt Martin Real Estate Management LLC's Consent Motion to Intervene (Matt Martin Motion to Intervene), Dkt. No. 13, at 1, which the court granted, Order of September 13, 2010, Dkt. No. 14.

On September 13, 2010 the court issued a protective order (Protective Order), Dkt. No. 16, finding "that certain information likely to be disclosed orally or in writing during the course of this litigation may be competition-sensitive or otherwise protectable and that entry of a Protective Order is necessary to safeguard the confidentiality of that information." Protective Order 1. The Protective Order granted counsel for parties access to the information. Id. at 2. The attorney of record for Matt Martin is Laurence Schor (Counsel for Matt Martin, Counsel, or Matt Martin's Counsel), a partner of Asmar, Schor & McKenna, PLLC. See Matt Martin Motion to Intervene 1.

The Protective Order directed that "[p]rotected information may be used solely for the purposes of this litigation and may not be given, shown, made available, discussed, or otherwise conveyed in any form except as provided herein." Protective Order 2. The Protective Order further provided that "[n]othing contained in this order shall preclude a party from seeking relief from this Protective Order through the filing of an appropriate motion with the court setting forth the basis for the relief sought." Id. at 5.

After the Protective Order was issued, defendant filed the administrative record (AR), which contained sensitive procurement information that is not publicly available, including proposals submitted by various bidders in response to the Solicitation, e.g., AR Tab 40, and evaluations of proposals by HUD personnel involved with the procurement, e.g., AR Tab 37. Pyramid filed for judgment on the administrative record under Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC), and defendant and defendant-intervenors[1] filed cross-motions for judgment on the administrative record. In the final round of briefing on the motions for judgment on the administrative record, Matt Martin stated that it had decided, based on protected information, to file its own protest for several Homeownership Control Areas (Areas) in which it was an unsuccessful bidder: [2]

---

[1]The second intervenor, HomeTelos, LP (HomeTelos) is also a successful bidder in Solicitation R-OPC-23441 (Solicitation). HomeTelos's Motion to Intervene, Dkt. No. 17, 1.

[2]The Solicitation divided the country geographically into a number of Homeownership Center Areas (Areas). Administrative Record (AR) Tab 13, at 360. This bid protest action challenged the awards made in Area 2D, which included southern Texas, Kansas, Missouri, Arkansas, Louisiana and Oklahoma. See AR Tab 14, at 524. Matt Martin Real Estate Management LLC (Matt Martin) received an award in Area 2D, but was an unsuccessful offeror in several other Areas. Matt Martin Real Estate Management LLC's Response to Defendant's Motion to Enforce the Protective Order (Matt Martin Resp.), Docket Number (Dkt. No.) 64, at 2. Matt Martin challenged the awards in Areas 3P, 1A, 2A and 2S. Matt Martin Real Estate Mgmt.

> In reviewing the Source Selection Recommendation to draft this response to HomeTelos's Motion, it appears that for some areas, HUD rated offerors primarily based on price which runs counter to the terms of the Solicitation. This failure to properly weigh the award criteria prejudiced [Matt Martin] in four Areas and [Matt Martin] will be filing a protest on these grounds immediately.

Matt Martin Real Estate Management LLC's Reply to Plaintiff's Consolidated Reply and Response, and Response to HomeTelos, LP's Cross-Motion for Judgment on the Administrative Record (Matt Martin Brief), Dkt. No. 45, at 10 n.7. The day after filing this brief, October 6, 2010, Matt Martin filed a new bid protest, which was assigned to the same judge and docketed as Matt Martin Real Estate Mgmt. LLC v. United States (Matt Martin), No. 10-675 (Fed. Cl.). Although Counsel for Matt Martin relied on the protected information to determine that filing a separate protest would be appropriate, he states that "[w]hen conveying [his] conclusion that grounds for protest existed, Counsel exercised extreme care not to disclose any protected information or make any statements from which [Matt Martin's] representatives would be able to deduce protected information." Matt Martin Status Report 3.

      In its Complaint (Complaint or Compl.), Matt Martin Dkt. No. 20, which was filed under seal,[3] Matt Martin disclosed information covered by the Protective Order in this case. The Solicitation, which is publicly available, stated that proposals would be evaluated based on four technical factors and price, price being the least important. AR Tab 13, at 516. In its Complaint, Matt Martin revealed the rating its proposal had received for each of the technical factors. Compl. ¶ 8. Matt Martin also included a table that "detail[ed] the Technical Factor ratings, Overall Ratings, and Prices of the awardees and [Matt Martin] for the Protested Areas." Compl. ¶ 11; Compl. Exhibit A (Table of Ratings and Prices). Counsel for Matt Martin did not seek relief from the Protective Order before filing Matt Martin's Complaint or advising his client to pursue its own bid protest.

      Three successful offerors who had not bid on Area 2D and were not admitted to the Protective Order intervened in Matt Martin's bid protest and were admitted to that protective order, giving their counsel access to Matt Martin's unredacted Complaint. See Order I of October 12, 2010, Matt Martin Dkt. No. 14 (granting BLB Resources Inc.'s motion to intervene); Order II of October 12, 2010, Matt Martin Dkt. No. 15 (granting

---

LLC v. United States (Matt Martin), No. 10-675 (Fed. Cl.), Complaint (Complaint), Dkt. No. 20, Prayer for Relief ¶ b.

    [3]Citations to the Matt Martin Complaint are to the redacted version, which is publicly available.

Ofori & Associates, P.C.'s motion to intervene); Order of Oct. 18, 2010, Matt Martin Dkt. No. 19 (granting Pemco Ltd.'s motion to intervene).

On October 7, 2010, the day after Matt Martin filed its Complaint, the government filed its Status Report, in which it stated that Matt Martin had "violated the terms of the protective order." Defendant's Status Report 2. On October 14, 2010 the court, in a sealed opinion (subsequently redacted), granted the government and defendant-intervenors judgment on the administrative record in this case. Redacted Opinion of Nov. 1, 2010, Dkt. No. 60, Pyramid Real Estate Servs. v. United States, No. 10-599, 2010 WL 4299979, at *13 n.1 (Fed. Cl. Nov. 1, 2010). Judgment was entered for the government on October 15, 2010. Judgment of Oct. 15, 2010, Dkt. No. 53. On October 18, 2010 the court held a telephonic status conference to discuss the government's allegation that Counsel for Matt Martin had violated the Protective Order, and on October 29, 2010 the government filed its Motion to Enforce the Protective Order. On November 1, 2010 the court set an expedited briefing schedule on the alleged breach of the Protective Order. Order of Nov. 1, 2010, Dkt. No. 61. The court dismissed Matt Martin's bid protest in a sealed opinion on November 16, 2010. Opinion of Nov. 16, 2010, Matt Martin Dkt. No. 45. Judgment was entered on November 17, 2010. Judgment of Nov. 17, 2010, Matt Martin Dkt. No. 47.

II. Legal Standards for Sanctions or Remedies

Several sources of authority enable the court to impose sanctions or remedies on a party who does not comply with its orders. The three sources of authority relevant in the context of a breach of a protective order are RCFC 16(f), which governs the breach of pretrial orders, 28 U.S.C. § 2521(b)(3) (2006), which grants the court power to hold parties in civil contempt, and the court's inherent authority to sanction a party or attorney who willfully disobeys its orders. See generally Pac. Gas & Elec. v. United States (PG&E II),[4] 82 Fed. Cl. 474 (2008).[5]

Rule 16 governs the management of pre-trial conferences and proceedings. See RCFC 16. When a party or a party's attorney fails to obey a pretrial order, RCFC 16(f) directs that the court "must" impose sanctions "unless the noncompliance was substantially

[4]The PG&E court issued two orders on the topic of sanctions, Pacific Gas & Electric Co. v. United States (PG&E I), 79 Fed. Cl. 744 (2007) and Pacific Gas & Electric Co. v. United States (PG&E II), 82 Fed. Cl. 474 (2008). The court uses the abbreviation PG&E when referring to the case, Pacific Gas & Electric Co. v. United States, No. 04-74C (Fed. Cl.), as a whole.

[5]Rules 11 and 37 of the United States Court of Federal Claims (RCFC) also provide for sanctions. RCFC 11, 37; see Defendant's Status Report, Dkt. No. 48-1, at 3 (offering to submit briefing on whether sanctions would be appropriate under RCFC 37(b)). These rules are less relevant, however, to the breach of a protective order. PG&E II, 82 Fed. Cl. at 479 n.2.

justified or other circumstances make an award of expenses unjust."[6] RCFC 16(f)(2). Protective orders are included among the pretrial orders addressed by RCFC 16. PG&E II, 82 Fed. Cl. at 482-83.[7]

Pursuant to 28 U.S.C. § 2521(b)(3), the Court of Federal Claims has statutory authority to hold parties in civil contempt at its discretion for "disobedience or resistance to its lawful writ, process, order, rule, decree, or command." Before holding a party in contempt, the court should determine that "(1) the offending party violated an order of the court; (2) the violation was more than de minimis or technical noncompliance; and (3) the conduct was not the product of a good faith or reasonable interpretation of the order." Navajo Nation v. Peabody Coal Co., 7 F. App'x 951, 955 (Fed. Cir. 2001) (unpublished) (citing 7 James Wm. Moore et al., Moore's Federal Practice ¶ 37.51[7][b] (3d ed. 1999)). Although the Federal Circuit's opinion in Navajo Nation was unpublished, later cases in this court have largely followed the standard it, and the case it affirmed, set out. See, e.g., ViroMed Labs., Inc. v. United States, 87 Fed. Cl. 493, 500 (2009) (quoting Navajo Nation, 7 F. App'x at 955); Savantage Fin. Servs., Inc. v. United States, 86 Fed. Cl. 700, 704 (2009) (quoting Navajo Nation v. United States, 46 Fed. Cl. 353, 358 (2000)).[8]

---

[6] Rule 16(f) states:

> (1) In General. On motion or on its own, the court may issue any just orders, including those authorized by RCFC 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
>
> . . .
>
> (C) fails to obey a scheduling order or other pretrial order.
>
> (2) Imposing Fees and Costs. Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

[7] PG&E I and PG&E II, which were decided in 2007 and 2008, contain citations to a previous version of the RCFC. See PG&E I, 79 Fed. Cl.; PG&E II, 82 Fed. Cl. The RCFC have since been "amended to conform to the general restyling of the [Federal Rules of Civil Procedure]." RCFC 16, 2008 rules committee note. The court's authority to impose sanctions under RCFC 16(f) remains unchanged and, accordingly, the 2008 changes to the RCFC do not affect the reasoning of the court in PG&E.

[8] The court in Lion Raisins, Inc. v. United States (Lion Raisins), 64 Fed. Cl. 536, 541 (2005) stated that "[t]he United States Court of Appeals for the Federal Circuit has not addressed the standards governing the authority of the United States Court of Federal Claims to sanction a violation of a protective order pursuant to 28 U.S.C. § 2521(b)(3)." However, the court finds

"Civil contempt must be proven by clear and convincing evidence." Navajo Nation, 7 F. App'x at 955 (citing Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1572 (Fed. Cir. 1997)). A court "cannot hold a party in contempt if there is a 'fair ground of doubt as to the wrongfulness of the [party's] actions.'" Id. (quoting Preemption Devices, Inc. v. Minn. Mining & Mfg. Co., 803 F.2d 1170, 1173 (Fed. Cir. 1986)).

A third source of authority flows from the traditional understanding that "certain implied powers must necessarily result to our Courts of justice from the nature of their institution." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quoting United States v. Hudson, 11 U.S. 32, 34 (1812)). Among these powers is the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process," id. at 44-45, such as the imposition of attorney's fees for the "willful disobedience of a court order," id. at 45 (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y (Alyeska), 421 U.S. 240, 258 (1975)). "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." Roadway Express v. Piper, 447 U.S. 752, 764 (1980) (citations omitted). When determining whether to impose sanctions under their inherent authority, courts apply the same procedural requirements they would when considering sanctions for contempt. F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1137 (9th Cir. 2001) ("Although contempt and sanctions are not identical, the principles the Supreme Court articulated for cases of contempt in International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821 (1994), guide our determination of what procedural protections are necessary in imposing sanctions under a court's inherent powers."); PG&E II, 82 Fed. Cl. at 481 n.6 ("Although penalties for contempt and sanctions under the court's inherent authority are not identical, most courts treat them similarly in determining what requirements are necessary to impose them.") (citations omitted).[9]

## III. Discussion

After careful consideration, the court concludes that the actions of Counsel for Matt Martin warrant sanctions. Sanctions serve "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Nat'l Hockey League v. Metro. Hockey Club,

persuasive the guidance of the United States Court of Appeals for the Federal Circuit in Navajo Nation v. Peabody Coal Co., 7 F. App'x 951, 955 (2001) (unpublished) (citing 7 James Wm. Moore et al., Moore's Federal Practice ¶ 37.51[7][b] (3d ed. 1999)).

[9]One notable difference between the procedures for contempt and sanctions under the court's inherent authority is that in under the RCFC, "An order initiating a contempt proceeding against a person or entity other than a party must be served by a United States marshal or deputy marshal or by a person specially appointed by the court." RCFC 4.1(a)(1).

Inc., 427 U.S. 639, 643 (1976). The court would be remiss were it to allow parties to violate its orders without consequence. At the same time, it is appropriate for the court to take into account the facts and circumstances of the misconduct in imposing sanctions.

A. Violation of the Protective Order

Matt Martin contends that "[i]t is not clear that the Protective Order's restriction on the use of protected information to 'the purposes of this litigation' excludes [Counsel for Matt Martin's] use of this information to file a protest in the same forum, of the same procurement, and on behalf of the same client." Matt Martin Resp. 1-2. Matt Martin is incorrect because the term "this litigation" used in the Protective Order unambiguously excludes separate civil actions, including Matt Martin's separate bid protest. Matt Martin's Counsel has violated the Protective Order twice: once by advising its client to file a separate bid protest on the basis of protected information, and again by including protected information in its Complaint in that bid protest.

Protective orders are "[t]he principal vehicle relied upon by the court to ensure protection of sensitive information." RCFC Appendix C 16(a). They allow full and informed consideration of bid protests while protecting the government and other bidders from the release of sensitive source selection information and corporate information. Accordingly, "Enforcement of protective orders implicates the rule of law." PG&E II, 82 Fed. Cl. at 482 (citing Lion Raisins, Inc. v. United States (Lion Raisins), 64 Fed. Cl. 536, 542 (2005)). In language that mirrors the sample protective order provided in the index of sample forms following the RCFC, the Protective Order in this bid protest provides that "[p]rotected information may be used solely for the purposes of this litigation and may not be given, shown, made available, discussed, or otherwise conveyed in any form except as provided herein." Protective Order 2; RCFC Appendix of Forms, Form 8: Protective Order in Procurement Protest Cases. The plain meaning of this provision unambiguously restricts the use of protected information to the litigation of this bid protest, consistent with the role protective orders play in maintaining the integrity of the bid protest process.

Matt Martin, misinterpreting the Protective Order, argues that the words "for purposes of" allow it to use the protected information in aid of the broader purpose which Matt Martin maintains that the litigation itself serves: "to determine whether HUD's procurement actions complied with procurement laws and regulations." Matt Martin Resp. 7. Accordingly, Matt Martin suggests that, because "[t]he [Matt Martin] [p]rotest was a continuation of those purposes," its use of the protected information for that protest without first seeking leave from this court was not a violation of the Protective Order. Id.[10] The

[10]Counsel for Matt Martin also argues that were this bid protest taking place under the procedural rules that govern the United States Government Accountability Office or the United States District Courts, he could have used the protected information to file a supplemental protest or a cross-claim. Matt Martin Real Estate Management LLC's Response to Defendant's Motion for

United States Court of Appeals for the Federal Circuit (Federal Circuit) rejected a very similar argument in Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc. (Eagle Comtronics), 305 F.3d 1303 (Fed. Cir. 2002). During discovery in a patent dispute, Eagle Comtronics, Inc. (Eagle) determined that the opposing party had filed a patent application for a device that Eagle believed was invented by an Eagle employee. Id. at 1311. Despite a protective order directing that confidential material "shall not be used for any purpose other than for this action, unless authorized by the court," Eagle made photocopies of the application and filed them with the United States Patent and Trademark Office as its own patent applications. Id. Eagle argued that the patent application was made "for a purpose related to the action and was therefore within the scope of the protective order." Id. at 1314. The Federal Circuit disagreed, finding that the district court's failure to hold Eagle in contempt was an abuse of discretion. Id.

Matt Martin's interpretation also fails as a matter of textual analysis. Matt Martin puts a great deal of weight on the phrase "for purposes of this litigation" which, it argues, is "on its face, far broader than 'in this litigation.'" Matt Martin Resp. 7. The interpretation Matt Martin urges on the court mischaracterizes the plain meaning of the Protective Order and would greatly expand the permissible use of protected information in cases where the Court of Federal Claims' sample protective order is used.[11] In many types of cases, including bid protests, courts frequently refer to information shared or stipulations made "for purposes of" a particular case and not to be used for any other purpose. See, e.g., Exxon Shipping Co. v. Baker, 554 U.S. 471, 128 S. Ct. 2605, 2613 (2008) ("For the purposes of the case, Exxon stipulated to its negligence in the Valdez disaster and its ensuing liability for compensatory damages."); Adams v. United States, 471 F.3d 1321, 1327 (Fed. Cir. 2006) ("That exemption status has been changed by the settlement agreement, in which the government stipulated for the purpose of this case that the

---

Leave to File Status Report and Defendant's Status Report (Matt Martin Status Report), Dkt. No. 49, at 4-5; Matt Martin Resp. 8, 15. The government disagrees that such a cross-claim could have been brought in a district court. Defendant's Motion to Enforce the Protective Order, Dkt. No. 59, at 6 n.2 (citing Vinson v. Wash. Gas Light Co., 321 U.S. 489, 498 (1944)). Regardless of the answer to this hypothetical question, the fact remains that the United States Court of Federal Claims does not recognize cross-claims against the United States. See RCFC 13(f) ("Crossclaim Against a Coparty. [Not used.]") (brackets in original). Accordingly, Matt Martin's bid protest could not have been brought as a cross-claim in this action.

[11]Intervenor HomeTelos, LP (HomeTelos) suggests that under Matt Martin's interpretation of the Protective Order, Matt Martin could make "any use" of the protected information that it thought necessary to determine whether the government had complied with the procurement laws and regulations, including "going to the press" with protected information. Intervenor HomeTelos's Reply in Support of the United States'[] Motion to Enforce the Protective Order (HomeTelos Reply), Dkt. No. 66, at 4. This characterization appears to overstate Matt Martin's position.

plaintiffs were non-exempt.”); Compliance Corp. v. United States, 22 Cl. Ct. 193,196 (1990) (“Counsel for Compliance have since gained access to the privileged information for the purposes of this litigation, subject to a protective order.”). It is clear that when using the phrase “for purposes of,” the court and other courts did not intend to authorize use of the protected information in any litigation that supports similar underlying purposes.

Matt Martin also maintains that “the phrase ‘this litigation’ does not prohibit use of protected information in a protest in the same forum, of the same procurement, and on behalf of the same client . . . .” Matt Martin Resp. 6. In support of its position, Matt Martin relies on an absence of authority: “Defendant has cited no case in which such use has constituted a violation of a protective order.” Id. The fact that such a case cannot be found, however, appears instead to highlight what an unusual interpretation of the Protective Order Matt Martin urges on the court. Matt Martin cites no case in which a party was permitted to rely in one action on information it received pursuant to a protective order in another, regardless of how closely the two are related. To the contrary, parties that use protected information outside of the litigation in which it is disclosed are typically sanctioned if they did not first seek and receive leave from the court that granted the protective order. See, e.g., Eagle Comtronics, 305 F.3d at 1317-18; PG&E II, 82 Fed. Cl. at 477-78; Lion Raisins, 64 Fed. Cl. at 537-38, 544.

Even in the context of large, multi-award procurements, parties may not use protected information from one bid protest as the basis for another bid protest without seeking permission. As the government notes, the Matt Martin bid protest and this bid protest are clearly separate litigation.[12] Def.’s Mot. 5-7. Although they arise out of the same Solicitation, they concern different geographical areas and challenge the evaluation of bids on different grounds. Id. at 5. They follow different procedural tracks, contain different administrative records, and different parties have intervened. Id. at 6-7. Both cases were assigned to the same judge, but they need not have been. This court may consolidate multiple actions into one litigation for purposes of efficiency when large government solicitations spark multiple bid protests. See, e.g., Serco, Inc. v. United States, 81 Fed. Cl. 463 (2008). However, no motion was made to consolidate the Matt Martin protest with this bid protest, and the fact that consolidation is an affirmative act rather than an automatic one further supports the conclusion that the two are separate litigations.

Arguing in the alternative, Matt Martin asserts that it complied with the spirit, if not the letter, of the Protective Order because it did not reveal information to anyone outside of

[12]This court has, in the past, made the distinction even more sharply by requiring successful bidders to file as amici curiae rather than as intervenors. See, e.g., Anderson Columbia Envtl., Inc. v. United States, 43 Fed. Cl. 693, 695 (1999); United Int’l Investigative Servs. v. United States, 42 Fed. Cl. 73, 76 (1998).

the Protective Order. Matt Martin Resp. 10-11. "The primary function of the Protective Order," Matt Martin states, "is to prevent disclosure of protected information to parties not granted access by the Court." Id. at 11. Matt Martin states that "[i]n the instant case, the information in [Matt Martin's] Complaint was only disclosed (via a sealed filing) to the Court and the United States."[13] Id. at 14 (emphasis omitted). A protective order, however, limits not only the parties who can have access to the information, but also how they can use it. In this bid protest, parties were to use protected information "solely for the purposes of this litigation." Protective Order 2. In the similar situation presented in Eagle Comtronics, the Federal Circuit focused on the improper use of protected information order rather than to whom the information was revealed. Eagle argued that it had not violated the protective order "because it did not disclose the . . . application to anyone who had not already seen it." Eagle Comtronics, 305 F.3d at 1312. The Federal Circuit disagreed, noting that "[t]he integrity of the patent system is maintained in part by inventors' understanding that their patent applications will remain secret until either the patents issue or the applications are otherwise published by the [Patent and Trademark Office]. Breaches of this secrecy undermine the integrity of the patent system." Id. at 1314; see also Lion Raisins, 64 Fed. Cl. at 537-38, 544 (holding a party in contempt for using documents produced under a protective order in one action in a different action against the party that produced them). Breaches of a protective order similarly undermine the integrity of the bid protest system. If the purpose for which protected information is used is improper, "sanctions are wholly appropriate." Eagle Comtronics, 305 F.3d at 1314. It does not cure the violation that the information is filed under seal. See PG&E II, 82 Fed. Cl. at 477-78 (sanctioning an attorney for filing protected information in a different case under seal).

Counsel for Matt Martin violated the Protective Order both by including protected information in Matt Martin's Complaint in a separate bid protest and by using the protected information to advise his client to file that bid protest.[14] Defendant "take[s] Matt Martin's counsel at [his] word that [he] did not disclose specific source selection information with

[13]The court notes that strictly speaking, this statement is not correct. Three additional bidders who were not parties to this action, BLB Resources Inc., Ofori & Associates, P.C. and Pemco, Ltd. intervened in Matt Martin's bid protest and their counsel were given access to the Complaint, which contained protected information from this case.

[14]Counsel for Matt Martin cites an opinion written by the General Services Board of Contract Appeals (GSBCA) for the proposition that not only may an attorney rely on protected evidence when advising his or her client, but that the ethical rules binding the legal profession require him or her to do so. Matt Martin Resp. 9-10 (citing Sys. Mgmt. Am. Corp., GSBCA No. 9773-P, 1989 WL 59809 (June 2, 1989)). The court respectfully declines to adopt the position of the GSBCA. See National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, § 847(c)(1), 119 Stat. 3136, 3392-93 (2006) (providing that the Civilian Board of Contract Appeals is the successor to the authority of the GSBCA).

[his] client." Def.'s Mot. 10. The court likewise takes Matt Martin's Counsel at his word.[15] However, the use by Matt Martin's Counsel of the protected information to advise his client to bring a separate civil action outside of this litigation was improper, regardless of whether Counsel revealed the protected information he used to arrive at his conclusion. The prohibitions in the Protective Order against protected information being "given, shown, made available, [or] discussed" are illustrative, as the words that immediately follow them make clear: "or otherwise conveyed in any form except as provided herein." Protective Order 2. Counsel for Matt Martin may not believe he directly discussed or conveyed protected information, but by discussing the conclusions he drew from protected information with his client and using protected information to form litigation strategy outside of the current litigation, he clearly violated the Protective Order by employing protected information as a basis for advice that was not "solely for the purposes of this litigation." Certainly, as defendant notes, Counsel for Matt Martin would not argue that it could properly use its knowledge of protected source selection information or proprietary information to advise its client to bring an action alleging use of trade secrets or to offer suggestions on Matt Martin's proposals for future Marketing and Management contracts with HUD. See Def.'s Mot. 11. Had Matt Martin's Counsel been involved with competitive decisionmaking for its client, it would not even have been proper to admit the firm to the Protective Order at the outset of this bid protest. See U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468-69 (Fed. Cir. 1984) (holding that whether counsel can be admitted to a protective order must be governed by the actual facts of counsel's involvement with the client's business). Protected information may be used only for the purposes for which it is disclosed.

B. RCFC 16(f) and the Court's Inherent Authority

Violation of a protective order "falls within the scope of sanctionable activity under RCFC 16." PG&E II, 82 Fed. Cl. at 482. Rule 16 directs that "[i]nstead of or in addition to any other sanction,[16] the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." RCFC 16(f)(2). Matt Martin contends that the Protective Order was ambiguous, making its disclosure of protected information substantially justified, and making an award of expenses unjust. Matt Martin Resp. 15-16.

---

[15]Because the court takes Counsel for Matt Martin at his word, it is not necessary, as HomeTelos suggests, HomeTelos Reply 9-10, to order additional disclosure regarding the conversations Counsel had with his client.

[16]The court may issue any "just orders," including but not limited to those authorized by RCFC 37(b)(A)(2)(ii)-(vii). RCFC 16(f).

However, the Protective Order was not ambiguous. An award of expenses incurred as a result of the breach of the Protective Order is appropriate.

In the court's view, it is not appropriate to impose on Counsel for Matt Martin the expenses incurred to defend Matt Martin's bid protest, a sanction proposed by HomeTelos. HomeTelos Reply 11. Given the information made publicly available in the Solicitation and through the bid protests filed before Matt Martin's bid protest,[17] Matt Martin may well have been able to file its bid protest with allegations based on information already in the public record. Further, once Matt Martin filed its own bid protest, the government produced an administrative record that, while not identical to the administrative record in this bid protest, contained substantially all of the protected information Matt Martin wrongfully used to advise its client and prepare its Complaint. Given that Matt Martin could have filed its bid protest without the protected information, and given that, within days of the filing of Matt Martin's Complaint, it received substantially all of the protected information as part of the administrative record in that case, the award of expenses to defend the Matt Martin bid protest would, in the view of the court, be a greater sanction than justice requires.

Similarly, outright dismissal of Matt Martin's bid protest by striking the complaint, a sanction also proposed by the government, Def.'s Reply 11, would have been "a particularly severe sanction." Chambers, 501 U.S. at 45. "'[D]ismissal of an action for an attorney's failure to comply is a harsh sanction which the court should order only in extreme situations showing a clear record of delay or contumacious conduct by the plaintiff.'" Coleman v. Am. Red Cross, 23 F.3d 1091, 1095 (6th Cir. 1994) (emphasis in original) (quoting Carter v. City of Memphis, Tenn., 636 F.2d 159, 161 (6th Cir. 1980)). Although the actions taken by Counsel for Matt Martin violated the Protective Order, these actions do not rise to the level of "contumacious conduct." Striking the portions of the Complaint based on protected information, also proposed by the government, Def.'s Mot. 14, to the extent such a determination can be made, may have amounted to a similarly severe and unwarranted sanction. See Def.'s Reply 10 (suggesting that if the portions of the Complaint based on protected information from this case had been stricken, the Complaint would have been susceptible to a motion to dismiss under RCFC 12(b)(6)). Because Counsel for Matt Martin was granted access to substantially all of the protected information as a result of its

[17]Before Matt Martin brought its bid protest, three other bid protests related to the same procurement were filed: HomeSource Real Estate Asset Services, Inc. v. United States (HomeSource), No. 10-416C (Fed. Cl.), Harrington, Moran, Barksdale, Inc. v. United States, No. 10-600C (Fed. Cl.), and this bid protest. A number of redacted documents have been filed in relation to these bid protests, including a redacted version of the opinion in HomeSource, which was filed on August 25, 2010. HomeSource Real Estate Asset Servs., Inc. v. United States, 94 Fed. Cl. 466 (2010). The redacted version of the opinion in this bid protest was filed on November 1, 2010. Redacted Opinion of Nov. 1, 2010, Pyramid Real Estate Servs. v. United States, No. 10-599C, 2010 WL 4299979 (Fed. Cl. Nov. 1, 2010), Dkt. No. 60.

own bid protest, the court concludes that it is not necessary to require him to return or destroy all copies of the protected information from this case, as proposed by the government. Def.'s Mot. 14.

Where a court is able properly to sanction conduct under a statute or the RCFC, it will not ordinarily utilize its inherent authority to sanction parties, although it is not forbidden from doing so. Chambers, 501 U.S. at 50. Because the court is able to sanction Counsel for Matt Martin under RCFC 16, the court applies that rule to arrive at the appropriate sanctions. For the sake of judicial economy, however, the court notes that sanctions are also appropriate under its inherent authority to fashion an appropriate remedy for willful violation of its orders.[18]

Specifically, "[A] court may assess attorney's fees as a sanction for the 'willful disobedience of a court order.'" Id. at 45 (quoting Alyeska, 421 U.S. at 258). To determine that a party acted in willful disobedience of a court order, the court need not find that the party acted in bad faith. Alyeska, 421 U.S. at 258 ("[A] court may assess attorneys' fees for the willful disobedience of a court order . . . or when the . . . party has acted in bad faith . . . .") (emphasis added) (quotations omitted). Rather, a party commits a willful violation when he or she takes an action "that he knew or . . . should have known, to be contrary" to a court order. PG&E II, 82 Fed Cl. at 481 (citing Aloe Vera of Am., Inc. v. United States (Aloe Vera), 376 F.3d 960 (9th Cir. 2004)).

Counsel for Matt Martin knew or should have known that the Protective Order barred him from using protected information to file a separate bid protest. Not only was the prohibition on use of protected information outside of "this litigation" clear and

[18]Matt Martin misstates the standard to be applied when a court exercises its inherent authority to sanction parties. Matt Martin states that "this Court explained that it and most other courts treat contempt and sanctions under the court's inherent authority 'similarly in determining what requirements are necessary to impose them.'" Matt Martin Real Estate Management LLC's Surreply to Defendant's and HomeTelos LP's Replies in Support of Defendant's Motion to Enforce the Protective Order (Matt Martin Sur-Reply), Dkt. No. 68, at 5 n.3 (quoting PG&E II, 82 Fed. Cl. at 481 n.6). Matt Martin is suggesting that the court follow the more stringent contempt standards when imposing sanctions under its inherent authority. However, as the rest of the footnote from which Matt Martin quotes explains, courts follow the principles articulated in the context of contempt to "guide our determination of what procedural protections are necessary in imposing sanctions under the court's inherent powers." PG&E II, 82 Fed. Cl. 474, 481 n.6 (quoting F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc. (F.J. Hanshaw), 244 F.3d 1128, 1137 (9th Cir. 2001)) (emphasis added). The PG&E court did not apply the rigorous substantive guidelines appropriate to the civil contempt. See PG&E II, 82 Fed. Cl. at 474-88. The F.J. Hanshaw court did not mention substantive standards, focusing instead on "the procedural protections the accused party is entitled to before sanctions may be imposed." F.J. Hanshaw, 244 F.3d at 1132.

unambiguous as explained above in Part III.A, the court's opinion in Pacific Gas & Electric Co. v. United States (PG&E I), 79 Fed. Cl. 744 (2007) discussed the meaning of very similar language[19] in no uncertain terms:

> Counsel for plaintiff simply does not, under the Order Amending Protective Order, have the documents at its disposal for use in any case excepting only the case of Pacific Gas & Electric Co. v. United States, No. 04-74C. In . . . any other case, PG&E's counsel must persuade the other court to seek the documents for that court's review in camera. He cannot dangle before another judge in another case documents that he has explicitly been ordered to use 'in this [the PG&E] litigation only.'

PG&E I, 79 Fed. Cl. at 748 (quoting Pac. Gas & Elec. Co. v. United States, 2006 U.S. Claims LEXIS 418, at *5 n.3 (May 14, 2006)). The court found in PG&E I and PG&E II that two cases were not part of the same litigation even though they were at least as closely related as the Pyramid and Matt Martin bid protests. The PG&E case arose from essentially identical contracts relating to the storage of spent nuclear fuel and involved a great deal of shared discovery, see generally Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333 (2006), which is why an earlier protective order in PG&E allowed protected information to be shared with "attorneys for plaintiffs in the spent nuclear fuel cases." PG&E I, 79 Fed. Cl. at 745. Nevertheless, the court determined that the cases were not part of the same litigation. See id. at 748. Because Counsel for Matt Martin knew or should have known that his actions would violate the Protective Order, his violations were willful. See PG&E II, 82 Fed Cl. at 481.

    C.    Civil Contempt

In the court's view, a citation for civil contempt is not necessary. See 28 U.S.C. § 2521(b) (stating that the court has the power to punish by contempt "at its discretion").

---

[19]After granting a motion to compel production of documents that the government sought to withhold under the deliberative process privilege, the court in the PG&E case amended the protective order to make it more restrictive and very similar to the Protective Order in this case. See PG&E I, 79 Fed. Cl. at 745-46. The original protective order directed that documents could only be disclosed to "attorneys for plaintiffs in the spent nuclear fuel cases." Id. at 745. The amended protective order limited disclosure to "attorneys for plaintiffs in this litigation only . . . ." Id.; cf. Protective Order 2 ("Protected information may be used solely for the purposes of this litigation . . . .") (emphasis added). Matt Martin contends that the Protective Order in this bid protest is not as clear as the protective order in the PG&E cases, in which the court "went to great lengths" to limit the use of protected information under the protective order. Matt Martin Sur-Reply 12. However, the fact that the court in PG&E amended its protective order to make its language more restrictive and similar to the Protective Order in this case indicates that the Protective Order is quite specific as issued.

Civil contempt has long been recognized to be a "severe remedy." Cal. Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618 (1885); Abbott Labs. v. TorPharm, Inc., 503 F.3d 1372, 1383-84 (Fed. Cir. 2007) (quoting Molitor, 113 U.S. at 618). The violation by Counsel for Matt Martin of the Protective Order can be properly remedied by sanctions under RCFC 16(f) and the court's inherent authority. The actions of Counsel for Matt Martin do not demonstrate the bad faith required for a contempt citation under the Federal Circuit's guidelines.

     A party may not be held in contempt for good-faith conduct.[20] Navajo Nation, 7 F. App'x at 955. While the court concludes that Counsel for Matt Martin acted willfully in that he knew or should have known that he was acting in violation of the Protective Order, there is no reason to believe he acted in bad faith as the term is used in the context of contempt. Counsel for Matt Martin deserves and here receives both sanctions and the court's criticism for his conduct. But Counsel's actions are consistent with a lapse of judgment, not a bad-faith effort to circumvent the court's authority. Counsel for Matt Martin disclosed his intention to the court before filing a separate bid protest, see Matt Martin Brief 10 n.7, and offered to agree to a stay of litigation while the court examined the breach of the Protective Order, see Matt Martin Status Report 9, actions which support the conclusion that he was not attempting to hide his misuse of protected information, and was cooperative in efforts to remedy the harm. Once his possible violation of the Protective Order was brought to his and the court's attention, Counsel for Matt Martin has been consistently forthright, cooperative and professional in the resolution of the issue.

     Even though the court in PG&E I and PG&E II found that the violation of the protective order was more serious than does the court here, the court in PG&E I and PG&E II determined that sanctions under RCFC 16 and its inherent authority were sufficient. PG&E II, 82 Fed. Cl. at 482-84. There, the attorney used protected information not only in different litigation, but on behalf of a different client. PG&E I, 79 Fed. Cl. at 748. Further, while the government is required to provide the administrative record in a bid protest action, RCFC Appendix C ¶¶ 21-22, the protected information in PG&E was produced only after the court granted a motion to compel its production over the

---

[20]There was no discussion of bad faith in Eagle Comtronics, Inc. v. Arrow Communication Laboratories, Inc. (Eagle Comtronics), 305 F.3d 1303 (Fed. Cir. 2002), because the Federal Circuit was applying the contempt standard of the United States Court of Appeals for the Second Circuit (Second Circuit), which is less demanding. See Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1572 (Fed. Cir. 1997) ("In reviewing . . . issues not within our exclusive jurisdiction, we are guided by the law of the regional circuit."). In the Second Circuit, a violation need not be willful, "but it must be demonstrated that 'the contemnor was not reasonably diligent in attempting to comply.'" Eagle Comtronics, 305 F.3d at 1314 (quoting EEOC v. Local 638, 81 F.3d 1162, 1171 (2d Cir. 1996)).

government's objection that it was protected by the deliberative process privilege, PG&E II, 82 Fed. Cl. at 476. The protected information was not available in any other setting. By utilizing the protected information in different litigation instead of bringing a new motion to compel disclosure, the attorney was essentially using the order to compel in one case as a lever in the other case, "dang[ling] before another judge in another case documents that he has explicitly been ordered to use 'in this [the PG&E] litigation only.'" PG&E I, 79 Fed. Cl. at 748. When the defendant in PG&E confronted the attorney about his use of protected information, he refused to take corrective action. PG&E II, 82 Fed. Cl. at 484. By contrast, Counsel for Matt Martin has in fact "been responsive to the Court's directions as to how to deal with this matter." Matt Martin Sur-Reply 10.[21]

A contempt citation is also unnecessary in this situation because sufficient power to sanction Counsel for Matt Martin is available in RCFC 16 and the court's inherent authority. While determining in Eagle Comtronics that the district court had abused its discretion by not holding Eagle in contempt for breaching the protective order, the Federal Circuit noted the district court's finding that there had been no violation. Eagle Comtronics, 305 F.3d at 1306. In this case, the court concludes that there has been a violation of the Protective Order and imposes an appropriate sanction without holding Counsel for Matt Martin in civil contempt.

## IV. Conclusion

Counsel for Matt Martin argues on a number of grounds that he should not have been barred from pursuing a separate bid protest action after discovering what he considered to be flaws in the evaluation process. Counsel for Matt Martin asserts that under the procedural rules of the United States Government Accountability Office and the United States District Courts, he could have used the protected information to file a supplemental protest or a cross-claim. Matt Martin Status Report 4-5; Matt Martin Resp. 8, 15. HomeTelos had suggested resolving this bid protest with a limited recompetition between Pyramid and Matt Martin, causing Counsel for Matt Martin to respond that res judicata, waiver, and estoppel "could flow from the court's opinion" in this case, and that "a technically separate protest was the only available course of action" to protect his client's interests. Matt Martin Resp. 6-8. The court expresses no opinion on the merits of these arguments but notes that the time to raise them was in a motion for relief from the Protective Order. See Protective Order 5 ("Nothing contained in this order shall preclude a party from seeking relief from this Protective Order through the filing of an appropriate motion with the court setting forth the basis for the relief sought.") By unilaterally deciding to advise his client on the basis of protected information and to include protected

---

[21]Matt Martin also requested leave to file a retroactive Motion for Relief from the Protective Order. Matt Martin Status Report 8. The court declines to grant the requested retroactive relief.

information in his pleadings in separate litigation, Counsel for Matt Martin usurped the role of the court in determining whether relief from the Protective Order was appropriate. See Aloe Vera, 376 F.3d at 965 (finding that the party being sanctioned "was bound to follow the district court's directions, not some other course it considered to be just as good") This violation, while not sufficiently egregious to warrant a contempt citation, is not harmless. In addition to the harm done to a court's authority by a violation of its order and to the parties whose information was disclosed, the government and HomeTelos have been required to expend resources bringing a motion to enforce the Protective Order, and the court has expended judicial resources examining and deciding the motion.

Pursuant to RCFC 16(f) and the court's inherent authority to sanction willful violations of its orders, Counsel for Matt Martin is hereby ordered to pay the reasonable expenses incurred by defendant and defendant-intervenor HomeTelos, including attorney's fees, to file Defendant's Motion for Leave to File Status Report and Defendant's Motion to Enforce the Protective Order, and to support these motions with briefing.[22] Because Counsel for Matt Martin, not his client, committed the breach of the Protective Order, Counsel for Matt Martin is to pay the sanctions himself rather than passing the sanctions on to his client. See PG&E II, 82 Fed. Cl. at 488 n.12. The value of the attorney's fees will be measured by the reasonable number of hours worked multiplied by the prevailing market rates, that is "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. at 487-88 (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)); accord Multiservice Joint Venture, LLC v. United States, 374 F. App'x 963, 966 (Fed. Cir. 2010) (per curiam) (unpublished) (citing PG&E II, 82 Fed. Cl. at 487-88).

The government, HomeTelos, and Counsel for Matt Martin shall endeavor to stipulate to those costs, expenses and attorney's fees, and if they so agree, shall file a joint statement listing the amount of such items with the court no later than Monday, December 27, 2010 at 5:00 p.m. Eastern Standard Time (EST). In the event that they are unable to agree, the government and HomeTelos shall file with the court a bill of their costs, expenses, and attorney's fees, together with any necessary explanation or supporting documentation thereof, on or before Monday, January 3, 2011 at 5:00 p.m. EST.[23] Counsel for Matt Martin shall then file his response no later than Monday, January 10, 2011 at 5:00

[22]Because plaintiff Pyramid Real Estate Services, LLC did not submit briefs on the violation of the Protective Order, no payment is required to plaintiff.

[23]Such documentation, which will most likely consist of typical billing records, must be "in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and the need for the service, and the reasonable fee to be allowed." Martin v. United States, 12 Cl. Ct. 223, 227 (1987) (citing Hensley v. Eckerhart, 461 U.S. 429, 433, 441 (1983)).

p.m. EST.   Following a determination of such costs and fees, an appropriate order will be entered in this matter.


	IT IS SO ORDERED.

                                                                s/ Emily C. Hewitt
                                                                EMILY C. HEWITT
                                                                Chief Judge